UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

U.S. UNDERWRITERS INSURANCE COMPANY,                    Docket No.: 08-CV-985 (JSR)

                              Plaintiff,

            -against-                                    **DECLARATION OF**
                                                        **STEVEN VERVENIOTIS**
MILLENNIUM CARE, INC., DENISE PERRY,
WILLIAM H. PERRY, TERRENCE COUSINS, by his
grandmother and legal guardian LA VAIDA THOMAS,
LA VAIDA THOMAS, individually, and THE CITY OF
NEW YORK,

                                          Defendants.
-----------------------------------------------------------------X

     **STEVEN VERVENIOTIS,** an attorney duly admitted to practice law before this Court

and aware of the penalties of perjury, declares the following:

1.       I am a member of the Bar of this Court and am a partner with the firm of Miranda

Sokoloff Sambursky Slone Verveniotis LLP, attorneys for plaintiff, U.S. UNDERWRITERS

INSURANCE COMPANY ("U.S. UNDERWRITERS"), in the above-captioned action, and I am

familiar with all the facts and circumstances in this action.

2.       I submit this declaration pursuant to Rule 55 of the Federal Rules of Civil Procedure

in support of plaintiff's application for the entry of a default judgment against defendants

TERRENCE COUSINS, by his grandmother and legal guardian LA VAIDA THOMAS, LA

VAIDA THOMAS individually, and THE CITY OF NEW YORK, declaring that U.S.

UNDERWRITERS INSURANCE COMPANY has no obligation to defend or indemnify

MILLENNIUM CARE, INC., DENISE PERRY, or WILLIAM H. PERRY as to the claims

asserted in the action pending in the Supreme Court of the state of New York, County of Bronx,

entitled, <u>Terrence Cousins, by his grandmother La Vaida Thomas and legal guardian La Vaida</u>

Thomas, and La Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care, Inc. Index No. 23677/05.

3.       Defendants TERRENCE COUSINS, by his grandmother and legal guardian LA VAIDA THOMAS, LA VAIDA THOMAS individually, and THE CITY OF NEW YORK have not appeared in this action and a default judgment is warranted against them.

## THE COMPLAINT

4.       Plaintiff, U.S. UNDERWRITERS commenced this action seeking a declaration that it has no duty to defend or indemnify any defendant with respect to any claim asserted in the underlying action entitled Terrence Cousins, by his grandmother and legal guardian, La Vaida Thomas, and La Vaida Thomas, individually v. The City of New York and William H. Perry and amended to Terrence Cousins, by his grandmother and legal guardian, La Vaida Thomas, and La Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care commenced in the Supreme Court of the State of New York, County of Bronx, Index No. 23677/05, seeking damages for the personal injuries allegedly sustained by TERRENCE COUSINS as a result of his fall on June 12, 2005 (the "Underlying Personal Injury Action"). A copy of plaintiff U.S. UNDERWRITERS' Summons and Complaint is annexed hereto as **Exhibit A**.

## SERVICE OF PROCESS

5.       U.S. Underwriters served copies of the complaint upon defendant Terrence Cousins on February 11, 2008. A copy of the affidavit of service is annexed hereto as **Exhibit B**.

6.       U.S. Underwriters served copies of the complaint upon defendant La Vaida Thomas on February 11, 2008. A copy of the affidavit of service is annexed hereto as **Exhibit C**.

2

7.     U.S. Underwriters served copies of the complaint upon defendant City of New York on February 4, 2008. A copy of the affidavit of service is annexed hereto as **Exhibit D**.

## COUSINS, THOMAS AND CITY ARE IN DEFAULT

8.     Defendants have failed to answer and/or move with regard to the complaint and their time to answer and/or move has expired. Accordingly, these defendants are now in default on the basis of their failure to timely answer.

9.     Upon information and belief, Terrence Cousins, by his grandmother and legal guardian LaVaida Thomas, La Vaida Thomas, individually and/or the City of New York, are not minors, mentally incompetent or in the military service of the United States.

## THE RELEVANT POLICY OF INSURANCE

10.     U.S. Underwriters Insurance Company issued a Commercial Liability Policy, policy number CL 3079515, to Millennium Care, Inc. for the policy period September 26, 2004 to September 26, 2005, which affords coverage in accordance to its terms, provisions, and conditions (the "Policy"). A copy of the policy is attached as **Exhibit E**.

11.     While the complaint has a typo in terms of the reference of the policy dates, the policy in place is actually the policy attached hereto as Exhibit E.

## THE UNDERLYING LAWSUIT

12.     The Underlying Personal Injury lawsuit was filed on November 15, 2005 as against the City and William H. Perry. On or about November 15, 2005, a lawsuit was filed, entitled, Terrence Cousins, by his grandmother and legal guardian, La Vaida Thomas and La Vaida Thomas, individually against the City of New York and William H. Perry, in the State of New York, County of Bronx, Index No. 23677/05. A copy of the complaint is attached as **Exhibit F**.

13.     On or about February 23, 2007, a Supplemental Summons and Verified Complaint

were filed in the Supreme Court of the State of New York, County of Bronx, entitled, <u>Terrence</u> <u>Cousins, by his grandmother La Vaida Thomas and legal guardian La Vaida Thomas, and La</u> <u>Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care,</u> <u>Inc.,</u> seeking damages for alleged bodily injuries sustained by TERRENCE COUSINS as a result of his fall on June 12, 2005. A copy of the amended complaint is attached as **Exhibit G**.

14.     In the underlying lawsuit, it is alleged that on or about June 12, 2005, TERRENCE COUSINS, while traversing on the sidewalk adjacent to the fenced-in lot located between the premises located at 601 East 163rd Street and 955 Cauldwell Avenue, Bronx, New York, was caused to sustain injuries.

15.     The Perrys, in fact, were aware of that lawsuit and had filed an answer on behalf of Mr. Perry as of February 15, 2007. A copy of the answer is attached as **Exhibit H**.

## TIMELY NOTICE WAS NOT PROVIDED AND A DECLARATION IS WARRANTED

16.     Even though the Perrys were aware in early 2005 of the lawsuit concerning an accident that occurred on their property on June 12, 2005, first notice as to the accident and claims and lawsuit arising therefrom was not provided to U.S. Underwriters until August 27, 2007. A copy of that first notice is attached as **Exhibit I**.

17.     In that the Policy condition requiring notice to U.S. Underwriters of occurrence or claim was breached, U.S. Underwriters issued letters dated August 30, 2007 and September 21, 2007 disclaiming on the basis of late notice.    Copies are attached as **Exhibit J** and **K,** respectively.

18.     The disclaimer letters were also sent to the attorneys for Terrence Cousins, La Vaida Thomas and the City of New York.

19.        As can be seen from the foregoing, plaintiff U.S. UNDERWRITERS has a meritorious claim against defendants, Terrence Cousins, LaVaida Thomas and the City of New York for a declaration that there is no coverage provided by the subject policy for this incident.

20.        Accordingly, plaintiff U.S. UNDERWRITERS is entitled to a default judgment against the non-answering defendants, Terrence Cousins, LaVaida Thomas and the City of New York.

21.        No previous application has been made for the relief herein prayed for.

**WHEREFORE**, it is respectfully requested that the Court grant plaintiff, U.S. UNDERWRITERS INSURANCE COMPANY, summary judgment declaring that it has no obligation either to defend or indemnify Terrence Cousins, LaVaida Thomas and the City of New York as to the claims asserted in the lawsuit filed in the Supreme Court of the State of New York, Bronx County, captioned as <u>Terrence Cousins, by his grandmother La Vaida Thomas and legal guardian La Vaida Thomas, and La Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care, Inc.,</u> Index No. 23677/05, together with such other and further relief as the Court deems just and proper.

Dated: Mineola, New York
       August 19, 2008

STEVEN VERVENIOTIS (SV-8800)

5

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK   )
                         ) ss.:

COUNTY OF NASSAU     )

       Leila Krim, being duly sworn, deposes and says that deponent is not a party to the action,

is over 18 years of age and resides in Long Beach, New York.

       That on August 19, 2008, deponent served the within **NOTICE OF MOTION AND**

**DECLARATION OF STEVEN VERVENIOTIS** upon:

| | |
|---|---|
| Nnenna Onua, Esq.<br>Attorney for Defendants<br>Millennium Care, Denise Perry<br>and William Perry<br>26 Court Street – Suite 1600<br>Brooklyn, NY  11242 | TERRENCE COUSINS<br>Defendant<br>951 Prospect Avenue - Apt. 3D<br>Bronx, New York 10459 |
| CITY OF NEW YORK<br>c/o Corporation Counsel<br>100 Church Street<br>New York, NY  10007 | LA VAIDA THOMAS<br>Defendant<br>951 Prospect Avenue - Apt. 3D<br>Bronx, New York 10459 |

the addresses designated by said attorney(s) for that purpose by depositing a true copy of same

enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive

care and custody of the United States Post Office Department within the State of New York and

by facsimile to (718) 596-5009, the attorney's fax number.

                                    _____
                                      Leila Krim

Sworn to before me this _19th_
day of August 2008

_____
NOTARY PUBLIC

Melissa L. Holtzer
Notary Public, State of New York
No. 02HO6171185
Qualified in Nassau County
Commission Expires 7/23/2011

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
U.S. UNDERWRITERS INSURANCE COMPANY,                    CIV:

                              Plaintiff,

                                                        **COMPLAINT**

              -against-

MILLENNIUM CARE, INC., DENISE PERRY, WILLIAM
H. PERRY, TERRENCE COUSINS, by his grandmother and
legal guardian LA VAIDA THOMAS, LA VAIDA
THOMAS, individually, and THE CITY OF NEW YORK,

                              Defendants.
-------------------------------------------------------------------x

    Plaintiff, U.S. UNDERWRITERS INSURANCE COMPANY ("U.S.

UNDERWRITERS"), by its attorneys, MIRANDA SOKOLOFF SAMBURSKY SLONE

VERVENIOTIS LLP, complaining of the defendants, alleges, upon information and belief, as

follows:

### THE PARTIES

1. At all times hereinafter mentioned, plaintiff was and still is a corporation duly organized
   and existing under and by virtue of the laws of North Dakota, with its principal place of
   business located at 190 South Warner Road, Wayne, Pennsylvania.

2. At all times hereinafter mentioned, plaintiff issued policies of insurance through agents in
   the State of New York.

3. Upon information and belief Millennium Care, Inc. is a domestic corporation with
   premises located at 2542 Frederick Douglass Boulevard, New York, New York 10030.

4. Upon information and belief, Denise Perry is a resident of 133 West 179th Street, Bronx,
   New York 10453.

5. Upon information and belief, WILLIAM H. PERRY was and is a resident of 134 West 180th Street, Bronx, New York.

6. Upon information and belief, at all times hereinafter mentioned, Defendant TERRENCE COUSINS, by his grandmother and legal guardian LA VAIDA THOMAS, was and is a resident of 951 Prospect Avenue, Apt. 3D, Bronx, New York 10459.

7. Upon information and belief, LA VAIDA THOMAS was and is a resident of 951 Prospect Avenue, Apt. 3D, Bronx, New York 10459.

8. THE CITY OF NEW YORK (the "City") was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

## JURISDICTION

9. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. Section 1332. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in that the claim arose in this district.

10. A controversy exists between the parties as to the coverage afforded under U.S. Underwriters' policy of insurance number CL 3079515A, as well as the provisions of said policy.

11. Plaintiff has no adequate remedy at law.

## THE POLICY

12. U.S. Underwriters Insurance Company issued a Commercial Liability Policy, policy number CL 3079515A, to Millennium Care, Inc. for the policy period September 26, 2005 to September 26, 2006, which affords coverage in accordance to its terms, provisions, and conditions (the "Policy").

2

## THE UNDERLYING ACTION

13. On or about November 15, 2005, a lawsuit was filed, entitled, <u>Terrence Cousins, by his grandmother and legal guardian, La Vaida Thomas and La Vaida Thomas, individually against the City of New York and William H. Perry</u>, in the Supreme Court of the State of New York, County of Bronx, Index No. 23677/05..

14. On or about February 23, 2007, a Supplemental Summons and Verified Complaint were filed in the Supreme Court of the State of New York, County of Bronx, entitled, <u>Terrence Cousins, by his grandmother La Vaida Thomas and legal guardian La Vaida Thomas, and La Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care, Inc.</u>, seeking damages for alleged bodily injuries sustained by TERRENCE COUSINS as a result of his fall on June 12, 2005 ("the Underlying Personal Injury Action").

15. It is alleged in the Underlying Personal Injury Action that on or about June 12, 2005, TERRENCE COUSINS, while traversing on the sidewalk adjacent to the fenced-in lot located between the premises located at 601 East 163rd Street and 955 Cauldwell Avenue, Bronx, New York, was caused to sustain injuries.

16. U.S. Underwriters has retained counsel to represent Millennium Care, Inc. in the Underlying Personal Injury Action, subject to coverage issues under the Policy.

## AS AND FOR A FIRST CAUSE OF ACTION

17. Plaintiff repeats and realleges each and every allegation contained in the paragraphs of the complaint numbered 1 through 16 as if fully set forth at length herein.

18. Millennium Care Inc.'s liability policy with U.S. Underwriters states in pertinent part as follows:

3

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 2. Duties In The Event of Occurrence, Offense, Claim or Suit

a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The name and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.     If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

19. The accident at issue in the Underlying Personal Injury Action took place on June 12, 2005.

20. U.S. Underwriters did not receive any notice of the occurrence from Millennium Care, Inc., Denise Perry, William H. Perry, Terrence Cousins or La Vaida Thomas or the City.

21. U.S. Underwriters did not receive any notice of the claim from Millennium Care, Inc., Denise Perry, William H. Perry, Terrence Cousins or La Vaida Thomas or the City.

22. The Policy condition requiring notice to U.S. Underwriters of occurrence or claim was, therefore, breached.

23. The lawsuit was filed on November 15, 2005 as against the City and William H. Perry.

24. On or about July 31, 2006, a letter was sent from attorneys for Terrence Cousins to William H. Perry notifying him of the lawsuit.

25. The Supplemental Summons and Complaint was filed on February 23, 2007.

26. U.S. Underwriters was notified of the lawsuit on or about August 27, 2007 with the Complaint and Notice of Motion for Default Judgment.

27. U.S. Underwriters issued letters dated August 30, 2007 and September 21, 2007 disclaiming on the basis of late notice.

28. The disclaimer letters were also sent to the attorneys for the plaintiffs.

29. The policy condition requiring timely notice to U.S. Underwriters of the lawsuit was breached by Millennium Care, Inc., Denise Perry, William H. Perry, Terrence Cousins, La Vaida Thomas and the City.

30. By reason of the foregoing, U.S. Underwriters is entitled to a declaration that it has no duty to defend or indemnify Millennium Care, Inc., Denise Perry, or William H. Perry with respect to any and all claims made and suits brought in the Underlying Personal Injury Action.

31. By reason of the foregoing, U.S. Underwriters is entitled to a declaration that it has no duty to defend or indemnify La Vaida Thomas, Terrence Cousins and the City with respect to any and all claims made and suits brought in the Underlying Personal Injury Action.

## AS AND FOR A SECOND CAUSE OF ACTION

32. Plaintiff repeats and realleges each and every allegation contained in the paragraphs of the complaint numbered 1 through 31 as if fully set forth at length herein.

33. Millennium Care, Inc.'s liability policy with U.S. Underwriters states in pertinent part as follows:

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part

Premises:

Project:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

34. The policy's declaration page indicates that the location of all premises you own, rent or occupy is: 601 East 163rd Street, Bronx, New York, 10451.

35. The Complaint in the Underlying Personal Injury Action states that the occurrence took place on the sidewalk adjacent to the fenced-in lot located between 601 East 163rd Street and 955 Cauldwell Avenue, Bronx, New York.

36. The location, 955 Cauldwell Avenue, Bronx, New York, 10451 is not a covered location under the policy.

37. If the occurrence at issue in the Underlying Personal Injury Action did not take place within the premises covered by the policy, there is no coverage for the claims under the U.S. Underwriters policy number CL 3079515A.

38. By reason of the foregoing, U.S. Underwriters is entitled to a declaration that it has no duty to defend or indemnify Millennium Care, Inc., Denise Perry, or William H. Perry with respect to any and all claims made and suits brought in the Underlying Personal Injury Action.

39. By reason of the foregoing, U.S. Underwriters is entitled to a declaration that it has no duty to defend or indemnify La Vaida Thomas, Terrence Cousins and the City with respect to any and all claims made and suits brought in the Underlying Personal Injury Action.

**WHEREFORE**, plaintiff U.S. UNDERWRITERS INSURANCE COMPANY prays that judgment be made and entered herein:

(a)    declaring that plaintiff is not obligated to defend and/or indemnify Millennium Care, Inc., Denise Perry, William H. Perry, Terrence Cousins, La Vaida Thomas and the City of New York under U.S. UNDERWRITERS liability Policy Number CL 3079515A with respect to the claims in the Underlying Personal Injury Action; and

(b)    granting to plaintiff such other and further relief as to this Court may deem just, proper, and equitable under the circumstances, together with the costs and disbursements of this action.

DATED:    Mineola, New York
          January 28, 2008

                              MIRANDA SOKOLOFF SAMBURSKY
                              SLONE VERVENIOTIS LLP
                              Attorneys for Plaintiff
                              **U.S. UNDERWRITERS
                              INSURANCE COMPANY**

                              By:_____
                              Steven Verveniotis
                              240 Mineola Boulevard
                              The Esposito Building
                              Mineola, New York 11501
                              (516) 741-7676
                              Our File No.: 07-558

7

**Exhibit B**

*Maverick Process* 516-693-1100

|  | |
|---|---|
| Petitioner(s) | ATTORNEY  SOKOLOFF          20773 |
| Plaintiff(s) | RETURN DATE |
|  | INDEX NO  08 CV 0985 |
|  | INDEX DATE  1/30/2008 |
| Defendant(s) | CALENDAR NO |
| Respondent(s) | 3rd PARTY INDEX# |
|  | HON. RAKOFF |

- against -

MILLENNIUM CARE, INC., DENISE PERRY, WILLIAM H. PERRY,
TERRENCE COUSINS, BY HIS GRANDMOTHER AND LEGAL GUARDIAN
LA VAIDA THOMAS, INDIVIDUALLY, AND THE CITY OF NEW YORK,

STATE OF NEW YORK: COUNTY OF NASSAU                    SS:              **AFFIDAVIT OF SERVICE**

THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION
AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 2/11/2008        at  1:29 PM        at  951 PROSPECT AVE APT 3D BRONX, NY 10459

deponent served the within  SUMMONS IN A CIVIL ACTION & COMPLAINT AND RULE 7.1 STATEMENT

                                                                                                          **upon**

TERRENCE COUSINS                                ☑ Said Documents Were Properly Endorsed with the
                                                              Index Number and  Date of Filing thereon

                                                              witness/defendant/respondent (hereafter called the recipient) therein named.

A. Individual ☐ By Personally delivering to and leaving with said individual, and that he knew the person so served and described as recipient therein

B. Corp/ ☐ By delivering to and leaving with                                                          and that he knew the person
   Prtnshp       so served and authorized to accept service to ☐ an officer ☐ Director ☐ managing agent or general agent ☐ cashier ☐ AsstCashier
   ☐              ☐ Agent authorized by appointment or by law to receive service.

C. Suitable   By delivering thereat a true copy of each to        LA VAIDA THOMAS           a person of suitable age and discretion.
   Age Person  Said premises is recipient's ☐ actual place of business ☐ dwelling place ☑ usual place of abode within the state
   ☑

D. Affixing   By affixing a true copy of each to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place
   to Door, Etc. ☐ usual place of abode within the state.    Deponent was unable, with due diligence to find recipient or a person of suitable age
   ☐          discretion, thereat, having called there

             @                              @                              @

             Deponent talked to                        who stated that recipient ☐ lived ☐ worked there.

E. Mailing    On        2/12/2008        Deponent completed said service under the last two sections by mailing a copy of
   W/B,C or   the above named process by First Class Mail addressed to the witness/defendant/respondent to the above address of service which
   ☑          is recipient's ☑ last known residence ☐ last known place of business  (with additional endorsement of Personal and Confidential
             on face of envelope.)

             ☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

F. DRL        The required notice was legibly printed on the face of the summons.  I identified the defendant by photograph annexed hereto
   Sec232     which was provided by the plaintiff.
   ☐

G.            SEX    SKIN COLOR    HAIR COLOR    AGE (approx.)    HEIGHT (approx.)    WEIGHT (approx.)
Description   F      BLACK         GRAY          60               5'4"                220
   ☑          OTHER _____

Sec.8001Fee  A fee of   $0.00  , pursuant to CPLR Section 8001, was tendered to the witness.
   ☐

Military     I asked the person spoken to whether the defendant/respondent was in active military service of the United States or of the
   ☑          State of New York in any capacity whatever and received a negative reply. Defendant/Respondent wore ordinary civilian
             clothers and no military uniform. The source of my information and the grounds of my belief are the conversations and
             observations above narrated. Upon information and belief I aver that the defendant/respondent is not in the military service of
             New York State or of the United States as the term is defined in either the State or in the Federal statutes.

             Sworn Before me this day  12  of

             FEBRUARY              2008                    DONNA L. ODRISCOLL
                                                          NOTARY PUBLIC, State of New York
                                                          No. 01OD6126123
             _____                       Qualified in Nassau County              _____
                (NOTARY PUBLIC)                          Commission Expires on 4/25/2009             DAVID A SMITH #0912050

## Service of Process:

1:08-cv-00985-JSR U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
ECF

### U.S. District Court

### United States District Court for the Southern District of New York

**Notice of Electronic Filing**

The following transaction was entered by Verveniotis, Steven on 2/22/2008 at 3:01 PM EST and filed on 2/22/2008

**Case Name:**        U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
**Case Number:**      1:08-cv-985
**Filer:**            Terrence Cousins
**Document Number:** 8

**Docket Text:**
**AFFIDAVIT OF SERVICE. Terrence Cousins served on 2/11/2008, answer due 3/2/2008. Service was accepted by La Vaida Thomas. Document filed by Terrence Cousins. (Verveniotis, Steven)**

**1:08-cv-985 Notice has been electronically mailed to:**

Steven Verveniotis    sverveniotis@msssv.com, sramos@mirandasokoloff.com

**1:08-cv-985 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/22/2008] [FileNumber=4297695-0
] [657035cfee219547f7519786aeaa556ac8fd67fcbc0cc1d56acd20bea09e187f828
57593140a983db0cd607ec7d71f8d9c28b4a00e689ec512db4b93ce0dceac]]

P.O. Box 142
Garden City, N. Y. 11530

PERSONAL and CONFIDENTIAL

…ILING

TERRENCE COUSINS
951 PROSPECT AVE APT 3D
BRONX, NY 10459



02  IP
0004578781  FEB 12 2008
MAILED FROM ZIP CODE 11530

UNITED STATES POSTAGE
PITNEY BOWES
$000.75⁰

**Exhibit C**

DISTRICT COURT OF THE STATE OF NEW YORK
COUNTY OF SOUTHERN
Case 1:08-cv-00985-JSR   Document 15-4   Filed 08/19/2008   Page 2 of 2

*Maverick Process  516-693-1100*
20772

U.S. UNDERWRITERS INSURANCE COMPANY,

|  |  |
|---|---|
| Petitioner(s) | RETURN DATE |
| Plaintiff(s) | INDEX NO   08 CV 0985 |
|  | INDEX DATE   1/30/2008 |

- against -

MILLENNIUM CARE, INC., DENISE PERRY, WILLIAM H. PERRY, TERRENCE COUSINS, BY HIS GRANDMOTHER AND LEGAL GUARDIAN LA VAIDA THOMAS, INDIVIDUALLY, AND THE CITY OF NEW YORK,

|  |  |
|---|---|
| Defendant(s) | CALENDAR NO |
| Respondent(s) | 3rd PARTY INDEX# |
|  | HON. RAKOFF |

STATE OF NEW YORK: COUNTY OF NASSAU                     SS:                    **AFFIDAVIT OF SERVICE**

THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 2/11/2008      at   1:29 PM      at   951 PROSPECT AVE APT 3D BRONX, NY 10459

deponent served the within   SUMMONS IN A CIVIL ACTION & COMPLAINT AND RULE 7.1 STATEMENT

**upon**

LA VAIDA THOMAS                               ☑ Said Documents Were Properly Endorsed with the Index Number and Date of Filing thereon

witness/defendant/respondent (hereafter called the recipient) therein named.

A. Individual ☑  By Personally delivering to and leaving with said individual, and that he knew the person so served and described as recipient therein

B. Corp/ ☐  By delivering to and leaving with                                           and that he knew the person
Prtnshp    so served and authorized to accept service to ☐ an officer ☐ Director ☐ managing agent or general agent ☐ cashier ☐ AsstCashier
   ☐       ☐ Agent authorized by appointment or by law to receive service.

C. Suitable ☐  By delivering thereat a true copy of each to                                     a person of suitable age and discretion.
Age Person    Said premises is recipient's ☐ actual place of business ☐ dwelling place ☐ usual place of abode within the state

D. Affixing ☐  By affixing a true copy of each to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place
to Door, Etc.   ☐ usual place of abode within the state.   Deponent was unable, with due diligence to find recipient or a person of suitable age
   discretion, thereat, having called there

   @                    @                    @

   Deponent talked to                              who stated that recipient ☐ lived ☐ worked there.

E. Mailing ☐  On                      Deponent completed said service under the last two sections by mailing a copy of
W/B,C or   the above named process by First Class Mail addressed to the witness/defendant/respondent to the above address of service which
   is recipient's ☐ last known residence ☐ last known place of business   (with additional endorsement of Personal and Confidential
   on face of envelope.)
   ☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

F. DRL ☐  The required notice was legibly printed on the face of the summons. I identified the defendant by photograph annexed hereto
Sec232    which was provided by the plaintiff.

G. Description ☑

| SEX | SKIN COLOR | HAIR COLOR | AGE (approx.) | HEIGHT (approx.) | WEIGHT (approx.) |
|---|---|---|---|---|---|
| F | BLACK | GRAY | 60 | 5'4" | 220 |
| OTHER |  |  |  |  |  |

Sec.8001Fee ☐  A fee of   $0.00  , pursuant to CPLR Section 8001, was tendered to the witness.

Military ☑  I asked the person spoken to whether the defendant/respondent was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Defendant/Respondent wore ordinary civilian clothers and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant/respondent is not in the military service of New York State or of the United States as the term is defined in either the State or in the Federal statutes.

Sworn Before me this day  12  of

FEBRUARY              2008

_(signature)_
(NOTARY PUBLIC)

DONNA L. ODRISCOLL
NOTARY PUBLIC, State of New York
No. 01OD6126123
Qualified in Nassau County
Commission Expires on 4/25/2009

_(signature)_

DAVID A SMITH #0912050

## Service of Process:
1:08-cv-00985-JSR U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
ECF

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Verveniotis, Steven on 2/22/2008 at 2:56 PM EST and filed on 2/22/2008

**Case Name:**      U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
**Case Number:**    1:08-cv-985
**Filer:**          La Vaida Thomas
**Document Number:** 6

## Docket Text:
**AFFIDAVIT OF SERVICE of Summons and Complaint. La Vaida Thomas served on 2/11/2008, answer due 3/2/2008. Service was accepted by La Vaida Thomas. Document filed by La Vaida Thomas. (Verveniotis, Steven)**

**1:08-cv-985 Notice has been electronically mailed to:**

Steven Verveniotis    sverveniotis@msssv.com, sramos@mirandasokoloff.com

**1:08-cv-985 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/22/2008] [FileNumber=4297658-0
] [568adc793b269afdd980e6a261109be0eb1b6c117ba311dea8dedc82a3930b910f0
be593a40c6d9d0bfad843d7ac5140b469995faf640e9b3afb15ebbcf24745]]

**Exhibit D**

U.S. UNDERWRITERS INSURANCE COMPANY,

| | |
|---|---|
| Petitioner(s) | |
| Plaintiff(s) | RETURN DATE |
| | INDEX NO   08 CV 0985 |
| | INDEX DATE   1/30/2008 |
| | CALENDAR NO |

- against -

MILLENNIUM CARE, INC., DENISE PERRY, WILLIAM H. PERRY,
TERRENCE COUSINS, BY HIS GRANDMOTHER AND LEGAL GUARDIAN
LA VAIDA THOMAS, INDIVIDUALLY, AND THE CITY OF NEW YORK,

| | |
|---|---|
| Defendant(s) | 3rd PARTY INDEX# |
| Respondent(s) | HON. RAKOFF |

STATE OF NEW YORK: COUNTY OF NASSAU                    SS:                **AFFIDAVIT OF SERVICE**

THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION
AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 2/4/2008    at   3:48 PM    at   100 CHURCH STREET NEW YORK, NY 10007

deponent served the within   SUMMONS IN A CIVIL ACTION & COMPLAINT AND RULE 7.1 STATEMENT

                                                                                                          **upon**

CITY OF NEW YORK C/O CORPORATION COUNSEL          ☑ *Said Documents Were Properly Endorsed with the
                                                                            Index Number and Date of Filing thereon*

                                                 witness/defendant/respondent (hereafter called the recipient) therein named.

A. Individual   **By Personally delivering to and leaving with** said individual, and that he knew the person so served and described as recipient therein
☐

B. Corp/  ☑  **By delivering to and leaving with**    TAMEKIA MENDES-GAMMON                    and that he knew the person
   Prtnshp    so served and authorized to accept service to ☐ an officer ☐ Director ☑ managing agent or general agent ☐ cashier ☐ AsstCashier
☐              ☐ Agent authorized by appointment or by law to receive service.

C. Suitable   **By delivering thereat** a true copy of each to                                    a person of suitable age and discretion.
Age Person    Said premises is recipient's  ☐ actual place of business  ☐ dwelling place  ☐ usual place of abode within the state
☐

D. Affixing   **By affixing** a true copy of each to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place
to Door, Etc.  ☐ usual place of abode within the state.   Deponent was unable, with due diligence to find recipient or a person of suitable age
☐             discretion, thereat, having called there

              @                            @                            @

              Deponent talked to                                    who stated that recipient  ☐ lived  ☐ worked there.

E. Mailing    On                        Deponent completed said service under the last two sections by mailing a copy of
W/B,C or      the above named process by First Class Mail addressed to the witness/defendant/respondent to the above address of service which
☐             is recipient's: ☐ last known residence  ☐ last known place of business  (with additional endorsement of Personal and Confidential
              on face of envelope.)
              ☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

F. DRL        The required notice was legibly printed on the face of the summons. I identified the defendant by photograph annexed hereto
Sec232        which was provided by the plaintiff.
☐

G.            SEX     SKIN COLOR     HAIR COLOR      AGE (approx.)      HEIGHT (approx.)      WEIGHT (approx.)
Description    F        BLACK          BROWN            30                5'6"                 130
☑             OTHER

Sec.8001Fee   A fee of   $0.00   . pursuant to CPLR Section 8001, was tendered to the witness.
☐

Military      I asked the person spoken to whether the defendant/respondent was in active military service of the United States or of the
☐             State of New York in any capacity whatever and received a negative reply. Defendant/Respondent wore ordinary civilian
              clothers and no military uniform. The source of my information and the grounds of my belief are the conversations and
              observations above narrated. Upon information and belief I aver that the defendant/respondent is not in the military service of
              New York State or of the United States as the term is defined in either the State or in the Federal statutes.

              Sworn Before me this day  12  of                    DONNA L. ODRISCOLL
                                                                  NOTARY PUBLIC, State of New York
       FEBRUARY            2008                                    No. 01OD6126123
                                                                  Qualified in Nassau County
         (NOTARY PUBLIC)                                          Commission Expires on 4/25/2009      DAVID A SMITH #0912050

**Maverick Process** 516-693-1100

DISTRICT COURT OF THE STATE OF NEW YORK

| | |
|---|---|
| | Petitioner(s) |
| | Plaintiff(s) |

| | |
|---|---|
| RETURN DATE | |
| INDEX NO | 08 CV 0985 |
| INDEX DATE | 1/30/2008 |

- against -

MILLENNIUM CARE, INC., DENISE PERRY, WILLIAM H. PERRY,
TERRENCE COUSINS, BY HIS GRANDMOTHER AND LEGAL GUARDIAN
LA VAIDA THOMAS, INDIVIDUALLY, AND THE CITY OF NEW YORK,

| | |
|---|---|
| Defendant(s) | |
| Respondent(s) | |

| | |
|---|---|
| CALENDAR NO | |
| 3rd PARTY INDEX# | |
| HON. RAKOFF | |

STATE OF NEW YORK: COUNTY OF NASSAU                    SS:          **AFFIDAVIT OF SERVICE**

THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION
AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on **2/4/2008**      at    **3:48 PM**      at    **100 CHURCH STREET NEW YORK, NY 10007**

deponent served the within    SUMMONS IN A CIVIL ACTION & COMPLAINT AND RULE 7.1 STATEMENT

upon

CITY OF NEW YORK C/O CORPORATION COUNSEL          ☑ *Said Documents Were Properly Endorsed with the Index Number and Date of Filing thereon*

witness/defendant/respondent (hereafter called the recipient) therein named.

**A. Individual**    By Personally delivering to and leaving with said individual, and that he knew the person so served and described as recipient therein
☐

**B. Corp/** ☑    By delivering to and leaving with    TAMEKIA MENDES-GAMMON                    and that he knew the person
**Prtnshp**    so served and authorized to accept service to ☐an officer ☐Director ☑managing agent or general agent ☐cashier ☐AsstCashier
☐    ☐Agent authorized by appointment or by law to receive service.

**C. Suitable**    By delivering thereat a true copy of each to                    a person of suitable age and discretion.
**Age Person**    Said premises is recipient's   ☐ actual place of business   ☐ dwelling place   ☐ usual place of abode within the state
☐

**D. Affixing**    By affixing a true copy of each to the door of said premises, which is recipient's ☐actual place of business ☐dwelling place
**to Door, Etc.**    ☐usual place of abode within the state.    Deponent was unable, with due diligence to find recipient or a person of suitable age
☐    discretion, thereat, having called there

        @                    @                    @

Deponent talked to                    who stated that recipient ☐ lived ☐ worked there.

**E. Mailing**    On                    Deponent completed said service under the last two sections by mailing a copy of
**W/B,C or**    the above named process by First Class Mail addressed to the witness/defendant/respondent to the above address of service which
☐    is recipient's: ☐ last known residence   ☐ last known place of business   (with additional endorsement of Personal and Confidential
        on face of envelope.)

        ☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

**F. DRL**    The required notice was legibly printed on the face of the summons. I identified the defendant by photograph annexed hereto
**Sec232**    which was provided by the plaintiff.
☐

**G.**    SEX      SKIN COLOR      HAIR COLOR      AGE (approx.)      HEIGHT (approx.)      WEIGHT (approx.)

**Description**    F      BLACK      BROWN      30      5'6"      130
☑      OTHER

**Sec.8001Fee**    A fee of   $0.00   , pursuant to CPLR Section 8001, was tendered to the witness.
☐

**Military**    I asked the person spoken to whether the defendant/respondent was in active military service of the United States or of the
☐    State of New York in any capacity whatever and received a negative reply. Defendant/Respondent wore ordinary civilian
        clothers and no military uniform. The source of my information and the grounds of my belief are the conversations and
        observations above narrated. Upon information and belief I aver that the defendant/respondent is not in the military service of
        New York State or of the United States as the term is defined in either the State or in the Federal statutes.

Sworn Before me this day  12  of

FEBRUARY            2008

*(signature)*
(NOTARY PUBLIC)

DONNA L. ODRISCOLL
NOTARY PUBLIC, State of New York
No. 01OD6126123
Qualified in Nassau County
Commission Expires on 4/25/2009

*(signature)*

DAVID A SMITH #0912050

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

U.S. UNDERWRITERS INSURANCE COMPANY

**SUMMONS IN A CIVIL ACTION**

V.

MILLENNIUM CARE, INC., DENISE PERRY,
WILLIAM H. PERRY, TERRENCE COUSINS, by
his grandmother and legal guardian LA VAIDA

CASE NUMBER:

## 08 CV 0985

### JUDGE RAKOFF

TO: (Name and address of Defendant)

City of New York
c/o Corporation Counsel
100 Church Street
New York, NY 10007

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP
Attn: Steven Verveniotis
240 Mineola Boulevard
Mineola, New York 11501

an answer to the complaint which is served on you with this summons, within _____ thirty (30) _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                    JAN 3 0 2008

CLERK

(By) DEPUTY CLERK                                     DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

U.S. UNDERWRITERS INSURANCE COMPANY

**SUMMONS IN A CIVIL ACTION**

V.

MILLENNIUM CARE, INC., DENISE PERRY,
WILLIAM H. PERRY, TERRENCE COUSINS, by
his grandmother and legal guardian LA VAIDA

CASE NUMBER:

## 08 CV 0985

### JUDGE RAKOFF

TO: (Name and address of Defendant)

City of New York
c/o Corporation Counsel
100 Church Street
New York, NY  10007

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP
Attn:  Steven Verveniotis
240 Mineola Boulevard
Mineola, New York  11501

an answer to the complaint which is served on you with this summons, within _____ thirty (30) _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

JAN 3 0 2008

DATE

## Service of Process:
1:08-cv-00985-JSR U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
ECF

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Verveniotis, Steven on 2/22/2008 at 2:49 PM EST and filed on 2/22/2008

**Case Name:**     U.S. Underwriters Insurance Company v. Millennium Care, Inc. et al
**Case Number:**   1:08-cv-985
**Filer:**         The City of New York
**Document Number:** 4

**Docket Text:**
AFFIDAVIT OF SERVICE of Summons and Complaint. The City of New York served on 2/4/2008, answer due 2/24/2008. Service was accepted by Tamekia Mendes-Gammon. Document filed by The City of New York. (Verveniotis, Steven)

**1:08-cv-985 Notice has been electronically mailed to:**

Steven Verveniotis     sverveniotis@msssv.com, sramos@mirandasokoloff.com

**1:08-cv-985 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/22/2008] [FileNumber=4297591-0
] [5f1cd359a4fc30a7752305e6cdce3acad6c8d73ad3e83a723611fef617674f5e1d7
4ac9d9719f13487ea7abd196aef0cf678713ca745eddbf1272b2b98605938]]

**EXHIBIT E**

# United States Liability Insurance Group

**NEW**

Renewal of Number

190 South Warner Road

Wayne, PA  19087

COMMERCIAL LIABILITY POLICY

HOME OFFICE COPY

**POLICY DECLARATIONS**

**CL3079515**

- [ ] United States Liability Insurance Company
- [ ] Mount Vernon Fire Insurance Company
- [x] U.S. Underwriters Insurance Company

Named Insured  **MILLENIUM CARE INC.**

Address  **2542 FREDERICK DOUGLASS BOULEVARD
NEW YORK, NY 10030**

Policy Period  From 09/26/2004 To 09/26/2005

Form Of Business  Corporation

Business Description  Vacant Building

12:01 AM STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A LIMIT OF INSURANCE IS INDICATED.

| Coverage Part | Limits Of Insurance | Premium |
|---|---|---|
| **Commercial General Liability** | | $2,299.00 |
| Each Occurrence Limit | $1,000,000 | |
| Personal & Advertising Injury Limit (Any One Person/Organization) | $1,000,000 | |
| Medical Expense Limit (Any One Person) | $1,000 | |
| Damage To Premises Rented To You (Any One Premises) | $100,000 | |
| Products/Completed Operations Aggregate Limit | Excluded | |
| General Aggregate Limit (Other Than Products/Completed Operations) | $2,000,000 | |
| **Liquor Liability** | | $0.00 |
| Each Common Cause Limit | Not Covered | |
| Aggregate Limit | Not Covered | |
| **Professional Liability** | | $0.00 |
| Each Claim/Medical Incident Limit | Not Covered | |
| Aggregate Limit | Not Covered | |
| **Other** | | $0.00 |

| | |
|---|---|
| Total Advance Premium For This Policy (This Premium may be subject to adjustment.) | $2,299.00 Fully Earned |

Location Of All Premises You Own, Rent, Or Occupy: 1) 601 East 163rd Street, Bronx, NY 10451

**PREMIUM COMPUTATION**

| Location Territory | Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| 1 | Vacant Bldg-Not Factory-OTNFP | 68606 | A) 23000 | N/C | 99.960 | N/C | $2,299 |
| 001 | | | | | | | FE |

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue: **See Endorsement EOD (01/95)**

Policy Premium        **$2,299.00**

Issued Date: **09/24/2004**

By *Thomas P. Verney*

Authorized Representative

Agent        **MORSTAN GENERAL AGENCY, INC. (NEW JERSEY)**

Broker        **Tanenbaum - Harber Co. Inc.**

CLD (4/2000)

## EXTENSION OF DECLARATIONS

Policy Number: CL3079515                              Effective Date:09/26/2004

### FORMS AND ENDORSEMENTS

| Endt # | Revised | Description of Endorsements |
|--------|---------|---------------------------|
| 2110 | (11/99) | Service of Suit |
| CG0001 | (10/01) | Commercial General Liability Coverage Form |
| CG2104 | (11/85) | Exclusion-Products-Completed Operations Hazard |
| CG2136 | (01/96) | Exclusion-New Entities |
| CG2139 | (10/93) | Contractual Liability Limitation |
| CG2144 | (07/98) | Limitation of Coverage to Designated Premises |
| CL 600-B | (06/01) | Additional Exclusions and Conditions |
| CLJ | (03/96) | Commercial Liability Policy Jacket |
| IL0023 | (04/98) | Nuclear Energy Liability Exclusion End't |
| L-206 | (10/95) | Premium Fully Earned Endorsement |
| L-232s | (10/88) | Classification Limitation Endorsement |
| L-278 | (05/99) | Independent Contractors Exclusion |
| L-395 | (11/96) | Secured Vacant Building Condition |
| L-414 | (06/97) | Exclusion of Injury to Temporary Workers |
| L-469 | (03/99) | Exclusion - Injury to Casual Laborers |
| L-500 | (05/00) | Excl Injury to Employees, Contractors |
| L-526 | (02/02) | Absolute War or Terrorism Exclusion |
| L-532 | (08/03) | Exclusion - Construction Operations |
| TRIADN | (12/02) | Disclosure Notice of Terrorism Insurance Coverage |

### MODIFICATIONS TO ENDORSEMENTS

All other terms and conditions remain unchanged

EOD (1/95)

SECURED
VACANT BUILDING CONDITION

As a condition of this insurance you must provide that all Buildings covered by this policy of insurance are Locked with all windows and doors intact and/or all boarded up, and fully secured and protected from unauthorized entry at all times during the policy period.

L-395 (11/96)

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PA

## SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the General Counsel of the Company, or his nominee, at 190 South Warner Road, Wayne, Pennsylvania 19087 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

2110 (11/99)

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PA

### CLASSIFICATION LIMITATION ENDORSEMENT

Coverage under this contract is specifically limited to those classification codes listed in the policy.  No coverage is provided for any classification code or operation performed by the Named Insured not specifically listed in the Declaration of this policy.

All other terms and conditions remain unchanged.

L-232S (10/88)

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Premises: |
| --- |
| |
| **Project:** |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000
CG 00 01 10 01    □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    © ISO Properties, Inc., 2000       ☐

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

    © ISO Properties, Inc., 2000    CG 00 01 10 01    □

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

    © ISO Properties, Inc., 2000       □

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000    **CG 00 01 10 01**    □

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

   **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

     **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

     **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

     **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

     **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

   **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

 © ISO Properties, Inc., 2000    CG 00 01 10 01    □

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    © ISO Properties, Inc., 2000

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 © ISO Properties, Inc., 2000

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000
**CG 00 01 10 01**     ☐

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

COMMERCIAL GENERAL LIABILITY
CG 21 36 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **4.** of WHO IS AN INSURED (Section **II**) does not apply.

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

Copyright, Insurance Services Office, Inc., 1992

## ENDORSEMENT

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY INSURANCE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSIONS

### EMPLOYMENT RELATED PRACTICES EXCLUSION

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to: "Bodily injury" to:
(1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a), (b), (c)** above is directed.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2., Exclusions** of **Section I COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to: "Personal and advertising injury" to:
(1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal or advertising injury" to that person at whom any of the employment-related practices described in paragraphs **(a), (b), (c)** above is directed.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 2147 (7/98)          Copyright, Insurance Services Office, Inc., 1997

CL 600-B (6/01)          Page 1 of 4

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.

If a "suit" is brought against the insured or persons insured hereunder and falls within the coverage provided by this policy, seeking both compensatory damages and punitive or exemplary damages, no coverage shall be provided by this policy for any cost, interest, cost of defense or damages attributable to punitive or exemplary damages.

### NOTICE TO POLICYHOLDERS IMPORTANT - PLEASE READ

In addition to other exclusions, this insurance policy contains a specific exclusion for punitive and exemplary damages (see above). These damages are awarded as a means of punishment and to deter future anti-social behavior. We have introduced this exclusion because coverage for punitive or exemplary damages resulting from anti-social behavior would defeat the purpose of punishment and the resulting deterrent effect.

L-224 (3/78)

## ASBESTOS EXCLUSION

This policy does not apply to any "bodily injury," "property damage" or "personal and advertising injury" arising out of or resulting from Asbestos.

The Company shall not have any duty to defend any suit against the Insured seeking damages on account of any such injury.

All other terms and conditions remain unchanged.

L-261 (5/99)

## EXCLUSION - LEAD CONTAMINATION

This policy does not apply to "bodily injury," "property damage" or "personal and advertising injury" or any other loss, injury or damage, arising out of the ingestion, inhalation or absorption of lead in any form.

L-298 (5/99)

## AMENDMENT OF PREMIUM AUDIT CONDITIONS

Paragraph 5. of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV) is replaced by the following:

5.  Premium audit.
    a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.
    b.  Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the First Named Insured. If the total earned premium for the policy period is less than the advance premium, then the advance premium is the minimum premium and is not subject to further adjustment.
    c.  The First Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

L-338 (2/94)

## ABSOLUTE POLLUTION EXCLUSION - LIABILITY

The following supercedes the terms and conditions of this policy.  This insurance does not apply:

1.    to "bodily injury", "property damage", or "personal and advertising injury";
2.    to damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;
3.    to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", or
4.    to any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "pollutants", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense arising out of or related to any form of "pollutant", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is intentionally caused, or whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured.

This exclusion applies even if such "pollutant" has a function in, or is used by you in your business, operations, premises, site or location.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and "waste."

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

All other terms and conditions remain unchanged.

L 509 (6/01)


## MOLD, FUNGUS, BACTERIA, VIRUS AND ORGANIC PATHOGEN EXCLUSION - LIABILITY

The following supercedes the terms and conditions of this policy.  This insurance does not apply:

1.    to "bodily injury", "property damage", or "personal and advertising injury";
2.    to damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;
3.    to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens", or
4.    to any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense arising out of or related to any form of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is intentionally caused, or whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

All other terms and conditions remain unchanged.

L 514 (06/01)

# Commercial

# Liability

# Policy

**United States Liability**

**Insurance Group**

*A Berkshire Hathaway Company*

190 South Warner Road
Wayne, PA 19087-2191
1-800-523-5545 • www.usli.com

This policy jacket together with the declarations page,
coverage form and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

CLJ (3/96)

# Common Policy Conditions

Read your policy carefully!

## This policy consists of:

Declarations

☙

Nuclear Energy Liability Exclusion (Broad Form)

☙

Coverage Forms/Parts (As applicable)

☙

Endorsements (As applicable)

☙

Common Policy Conditions

# Common Policy Conditions

This policy is subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_signature_ Treasurer          _signature_ President

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

       (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

       (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

       (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

       (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

       (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    Copyright, Insurance Services Office, Inc., 1997       ☐

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

## PREMIUM FULLY EARNED ENDORSEMENT

It is hereby understood and agreed that regardless of the cancellation clause and cancellation table contained in this policy, the premium shown is FULLY EARNED upon inception of the policy and is not subject to short rate or pro rata cancellation by the insured.

All other terms and conditions of this **Policy** remain unchanged.  This endorsement is a part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

**L 206 (10-95)**                                                                                   **Page 1 of 1**

**UNITED STATES LIABILITY INSURANCE GROUP**
**WAYNE, PA**

**INDEPENDENT CONTRACTORS EXCLUSION**

It is agreed that this policy shall not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.

All other terms and conditions remain unchanged.

L 278 (Rev. 5/99)

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

### EXCLUSION OF INJURY TO TEMPORARY WORKERS AND VOLUNTEERS

This insurance does not apply to "bodily injury," "personal injury" or "advertising injury" to:

(1) any "temporary workers" or "volunteers;"

(2) the spouse, child, parent, brother or sister of that "temporary worker" or "volunteer" as a consequence of (1) above.

"Volunteer" means a person performing services for the insured without compensation.

This exclusion applies whether the insured may be liable as the party responsible for directing the "temporary worker" or "volunteer" in the performance of his or her duties, or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

L-414 (6/97)

Page 1 of 1

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

## EXCLUSION - INJURY TO CASUAL LABORERS

In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to:

    (i)    bodily injury to any casual laborer for which any insured may be held liable in any capacity;

    (ii)    any obligation of any insured to indemnify or contribute with another because of damages arising out of the bodily injury as a consequence of (i) above; or

    (iii)    bodily injury sustained by the spouse, child, parent, brother or sister of a casual laborer of any insured as a consequence of bodily injury to such casual laborer.

    Casual laborer means any person providing work or materials to any insured for compensation of any type.

This exclusion applies to all claims and suits by any person or organization for damages of such bodily injury including damages for care and loss of services.

All other terms and conditions remain unchanged.

L-469 (3/99)

Page 1 of 1

ENDORSEMENT


United States Liability Insurance Group
Wayne, PA


## EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS

This insurance does not apply to:

(i)      "bodily injury" to any "employee" of any insured arising out of or in the course of:

      (a)      Employment by any insured; or

      (b)      Performing duties related to the conduct of any insured's business;

(ii)      "bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such contractor or "employee" of such contractor for which any insured may become liable in any capacity; or

(iii)      any obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury"; or

(iv)      "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or of any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of such "bodily injury", including damages for care and loss of services.

As used herein the definition of "employee" includes a "leased worker" and a "temporary worker."

This exclusion replaces the exclusion relating to "bodily injury" to "employees" and relatives of "employees" contained in the Exclusions Section of the policy to which this endorsement is attached and the definition of "employee" in said policy.

All other terms and conditions remain unchanged.


L-500 (5/00)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE WAR OR TERRORISM EXCLUSION

The following supercedes the terms and conditions of this policy.

If the Policy to which this endorsement is attached contains an exclusion for War, that exclusion is deleted in its entirety and replaced with the following. If the Policy to which this endorsement is attached does not contain an exclusion for War, the exclusion below applies.

This insurance does not apply to, and the Company will not defend or pay Loss for, any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:

> (1) War, including undeclared or civil war;
> (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;
> (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or
> (4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

> regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage

The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:
   a. Use or threat of force or violence;
   b. Commission or threat of a dangerous act; or
   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
2. When one or both of the following applies:
   a. The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or
   b. It is reasonable to believe the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### COMMERCIAL UMBRELLA POLICY
### EXCESS LIABILITY POLICY

## EXCLUSION – CONSTRUCTION OPERATIONS

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury", or medical expenses arising out of any construction, "construction services", demolition, renovation or site preparations.

"Construction Services" includes, but is not limited to, surveying, drafting, test borings, or inspections.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

**L-532 (8/03)**                                                                 Page 1 of 1

# DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT ANY COVERAGE FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**COVERAGE FOR "INSURED LOSSES" AS DEFINED IN THE TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED IS SUBJECT TO THE COVERAGE TERMS, CONDITIONS, AMOUNTS AND LIMITS IN THIS POLICY APPLICABLE TO LOSSES ARISING FROM EVENTS OTHER THAN ACTS OF TERRORISM.**

**YOU SHOULD KNOW THAT UNDER FEDERAL LAW, YOU ARE NOT REQUIRED TO PURCHASE COVERAGE FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM**

## REJECTION OR SELECTION OF TERRORISM INSURANCE COVERAGE

Please "X" one of the boxes below and return this notice to the Company.

| | |
|---|---|
| | **I decline to purchase Terrorism Coverage. I understand that I will have no coverage for losses arising from acts of Terrorism.** |
| | **I elect to purchase coverage for certified acts of Terrorism for a premium of $_____.** |

**Note: if you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

_____
Applicant's Name

_____
Authorized Signature

_____
Print Name

_____
Date

United States Liability Insurance Company - U.S. Underwriters Insurance Company - Mt. Vernon Fire Insurance company

**TRIADN (12/2002)**

**EXHIBIT F**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------X

TERENCE COUSINS, an infant, by his grandmother and
legal guardian, LA VAIDA THOMAS, and LA VAIDA
THOMAS, individually,

Index No. 23677/05

DATE FILED 11/15/05

VERIFIED COMPLAINT

Plaintiffs,

-against-

THE CITY OF NEW YORK AND WILLIAM H. PERRY,

Defendants.

-------------------------------------------------------------------X

Plaintiffs, complaining of the Defendants herein by their attorneys, Antin, Ehrlich

& Epstein, P.C., respectfully sets forth and alleges as follows:

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF THE INFANT PLAINTIFF TERENCE COUSINS

1.  That at all times herein mentioned, Plaintiff, La Vaida Thomas, was and still is the

grandmother and legal guardian of the infant Plaintiff, Terence Cousins, with full right and

authority to prosecute this action and is presently acting in such capacity.

2.  That at all times herein mentioned, the Defendant, The City of New York was and still

is a Municipal Corporation organized and existing under and by virtue of the laws of the State of

New York.

3.  That at all times herein mentioned, Plaintiff duly served a Notice of Claim and

Intention to Sue thereupon on the Defendant, The City of New York, on July 29, 2005, within the

time prescribed by law.

4.  That Defendant, The City of New York, has neglected and refused to make an

1

adjustment in payment thereof within more than thirty (30) days after service of said Notice of Claim and Intention to Sue.

5. That the Plaintiff has duly complied with all statutes and laws applicable to the Defendant, The City of New York, precedent to the making of this claim and bringing this action.

6. That at all times herein mentioned, Defendant, The City of New York, its agents, servants and/or employees owned the sidewalk on East 163rd and Cauldwell Avenue adjacent to the premises located at 955 Cauldwell Avenue, in the County of Bronx, City and State of New York.

7. That at all times herein mentioned, Defendant, The City of New York, its agents, servants and/or employees controlled the sidewalk adjacent to the aforesaid premises.

8. That at all times herein mentioned, Defendant, The City of New York, its agents, servants and/or employees maintained the sidewalk adjacent to the aforesaid premises.

9. That at all times herein mentioned, Defendant, The City of New York, its agents, servants and/or employees managed the sidewalk adjacent to the aforesaid premises.

10. That at all times herein mentioned, Defendant, The City of New York, its agents, servants and/or employees inspected the sidewalk adjacent to the aforesaid premises.

11. That at all times herein mentioned, Defendant, William H. Perry, his agents, servants and/or employees owned the premises located at 601 East 163rd Street, in the County of Bronx, City and State of New York.

12. That at all times herein mentioned, Defendant, William H. Perry, his agents, servants and/or employees controlled the sidewalk in front of or adjacent to the aforesaid premises.

13. That at all times herein mentioned, Defendant, William H. Perry, his agents, servants

2

and/or employees maintained the sidewalk in front of or adjacent to the aforesaid premises.

14. That at all times herein mentioned, Defendant, William H. Perry, his agents, servants and/or employees managed the sidewalk in front of or adjacent to the aforesaid premises.

15. That at all times herein mentioned, Defendant, William H. Perry, his agents, servants and/or employees inspected the sidewalk in front of and/or adjacent to the aforesaid premises.

16. That on the June 12, 2005, while the infant Plaintiff was lawfully traversing on the sidewalk adjacent to the fenced-in lot located between the premises located at 601 East 163rd Street and 955 Cauldwell Avenue, all in the County of Bronx, City and State of New York, he was caused to sustain severe injuries as hereinafter set forth.

17. That the Defendants were at all times herein mentioned under a duty to keep the aforementioned sidewalk in a safe, proper and secure manner, in good repair and free from obstruction and defect.

18. That as a result of the foregoing, the infant Plaintiff was caused to and did sustain severe and serious injuries and was required to seek and maintain medical care and attention in an effort to cure and alleviate the same and, upon information and belief, will be compelled to do so in the future.

19. That this occurrence and the injuries sustained by the infant Plaintiff was caused wholly and solely by the negligence of the Defendants.

20. That as a result of the foregoing, this infant Plaintiff has been damaged in a sum that exceeds the jurisdictional amount of all lower Courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF LA VAIDA THOMAS

3

21. This Plaintiff repeats, reiterates and realleges each and every allegation in paragraphs of this Complaint numbered "1" through "20", inclusive, with the same force and effect as though the same were more fully set forth at length herein.

22. That at all times herein mentioned, this Plaintiff was the grandmother of the infant Plaintiff, Terence Cousins and was and still is entitled to the comfort, society and companionship of the infant Plaintiff, Terence Cousins.

23. That as a result of the foregoing, this Plaintiff has been deprived of the comfort, society and companionship of the infant Plaintiff, Terence Cousins, and, upon information and belief, will be so deprived in the future.

24. That at all times herein mentioned, Plaintiff, La Vaida Thomas, has been caused to incur medical expenses on behalf of the infant Plaintiff, Terence Cousins, and, upon information and belief, will be so compelled to do so in the future.

25. That as a result of the foregoing, this Plaintiff has been damaged in the sum that exceeds the jurisdictional amount of all lower Courts which would otherwise have jurisdiction.

**WHEREFORE**, infant Plaintiff, Terence Cousins, on the First Cause of Action demands judgement against the Defendants in the sum above mentioned, and Plaintiff, La Vaida Thomas, on the Second Cause of Action demands judgement against the Defendants in the sum above mentioned, all together with the costs and disbursements of this case.

Dated: New York, New York
      October 24, 2005

ANTIN, EHRLICH & EPSTEIN, P.C.
Attorneys for Plaintiff
49 West 37th Street, 7th Floor
New York, New York 10018
(212) 221-5999

By: _____
       Jeffrey S. Antin

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

TERENCE COUSINS, by his grandmother and legal guardian, LA VAIDA THOMAS and LA VAIDA THOMAS, individually,

Plaintiff,

-against-

THE CITY OF NEW YORK AND WILLIAM H. PERRY,

Defendants.

SUMMONS AND VERIFIED COMPLAINT

**ANTIN, EHRLICH & EPSTEIN, P.C.**

*Attorneys for*

Plaintiff
49 WEST 37ᵀᴴ STREET
7ᵀᴴ FLOOR
NEW YORK, NEW YORK 10018
(212) 221-5999

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated: ........................................    Signature.................................................

                                               Print Signer's Name.................................

*Service of a copy of the within*                                    *is hereby admitted.*

Dated:

                                               Attorney(s) for

**PLEASE TAKE NOTICE**

☐   *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*                    20
ENTRY

☐   *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.                                    one of the judges of the within named Court,*
SETTLEMENT   *at*
            *on                    20        , at                    M.*

Dated:

                                                            **ANTIN, EHRLICH & EPSTEIN, P.C.**

                                               *Attorneys for*

                                                            49 WEST 37ᵀᴴ STREET
                                                            7ᵀᴴ FLOOR
To:                                                         NEW YORK, NEW YORK 10018

*Attorney(s) for*

**EXHIBIT G**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

--------------------------------------------------------------X

TERENCE COUSINS, an infant, by his grandmother and     **Index No. 23677/05**
legal guardian, LA VAIDA THOMAS, and LA VAIDA
THOMAS, individually,

Plaintiffs,

-against-

THE CITY OF NEW YORK, WILLIAM H. PERRY
AND MILLENNUM CARE, INC.,

Defendants.

*AmENDeD*
**VERIFIED COMPLAINT**

--------------------------------------------------------------X

Plaintiffs, complaining of the Defendants herein by their attorneys, Antin, Ehrlich

& Epstein, P.C., respectfully sets forth and alleges as follows:

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF THE INFANT PLAINTIFF TERENCE COUSINS**

1. That at all times herein mentioned, Plaintiff, La Vaida Thomas, was and still is the

grandmother and legal guardian of the infant Plaintiff, Terence Cousins, with full right and

authority to prosecute this action and is presently acting in such capacity.

2. That at all times herein mentioned, the Defendant, The City of New York was and still

is a Municipal Corporation organized and existing under and by virtue of the laws of the State of

New York.

3. That at all times herein mentioned, Plaintiff duly served a Notice of Claim and

Intention to Sue thereupon on the Defendant, The City of New York, on July 29, 2005, within the

time prescribed by law.

1

4.  That Defendant, The City of New York, has neglected and refused to make an adjustment in payment thereof within more than thirty (30) days after service of said Notice of Claim and Intention to Sue.

5.  That the Plaintiff has duly complied with all statutes and laws applicable to the Defendant, The City of New York, precedent to the making of this claim and bringing this action.

6.  Upon information and belief, that at all times herein mentioned, defendant, Millennum Care, Inc., (hereinafter referred to as "Millennum") was a domestic business corporation duly organized and existing under and by virtue of the Laws of the State of New York.

7.  Upon information and belief, that at all times herein mentioned, defendant "Millennum", was and still is a Foreign Corporation duly organized and existing under and by virtue of the laws of a state other than the State of New York.

8.  Upon information and belief, that at all times hereinafter mentioned, the defendant, "Millennum", was and still is a Foreign Corporation duly organized and existing under and by virtue of the laws of a state other than the State of New York, but duly authorized to do business in the State of New York.

9.  Upon information and belief, that at all times hereinafter mentioned, the defendant, "Millennum", was and still is a partnership duly organized and existing under and by virtue of the laws of the State of New York.

10. Upon information and belief, that at all times hereinafter mentioned, the defendant, "Millennum", was and still is an unincorporated business existing under and by virtue of the laws of the State of New York.

2

11. That at all times herein mentioned, defendant, The City of New York, its agents, servants and/or employees owned the sidewalk on East 163rd and Cauldwell Avenue adjacent to the premises located at 955 Cauldwell Avenue, in the County of Bronx, City and State of New York.

12. That at all times herein mentioned, defendant, The City of New York, its agents, servants and/or employees controlled the sidewalk adjacent to the aforesaid premises.

13. That at all times herein mentioned, defendant, The City of New York, its agents, servants and/or employees maintained the sidewalk adjacent to the aforesaid premises.

14. That at all times herein mentioned, defendant, The City of New York, its agents, servants and/or employees managed the sidewalk adjacent to the aforesaid premises.

15. That at all times herein mentioned, defendant, The City of New York, its agents, servants and/or employees inspected the sidewalk adjacent to the aforesaid premises.

16. That at all times herein mentioned, defendant, William H. Perry, his agents, servants and/or employees owned the premises located at 601 East 163rd Street, in the County of Bronx, City and State of New York.

17. That at all times herein mentioned, defendant, William H. Perry, his agents, servants and/or employees controlled the sidewalk in front of or adjacent to the aforesaid premises.

18. That at all times herein mentioned, defendant, William H. Perry, his agents, servants and/or employees maintained the sidewalk in front of or adjacent to the aforesaid premises.

19. That at all times herein mentioned, defendant, William H. Perry, his agents, servants and/or employees managed the sidewalk in front of or adjacent to the aforesaid premises.

3

20. That at all times herein mentioned, defendant, William H. Perry, his agents, servants and/or employees inspected the sidewalk in front of and/or adjacent to the aforesaid premises.

21. That at all times herein mentioned, defendant, "Millennum", its agents, servants and/or employees owned the premises located at 601 East 163rd Street, in the County of Bronx, City and State of New York.

22. That at all times herein mentioned, defendant, "Millennum", its agents, servants and/or employees controlled the sidewalk in front of or adjacent to the aforesaid premises.

23. That at all times herein mentioned, defendant, "Millennum", its agents, servants and/or employees maintained the sidewalk in front of or adjacent to the aforesaid premises.

24. That at all times herein mentioned, defendant, "Millennum", its agents, servants and/or employees managed the sidewalk in front of or adjacent to the aforesaid premises.

25. That at all times herein mentioned, defendant, "Millennum", its agents, servants and/or employees inspected the sidewalk in front of and/or adjacent to the aforesaid premises.

26. That on the June 12, 2005, while the infant plaintiff was lawfully traversing on the sidewalk adjacent to the fenced-in lot located between the premises located at 601 East 163rd Street and 955 Cauldwell Avenue, all in the County of Bronx, City and State of New York, he was caused to sustain severe injuries as hereinafter set forth.

27. That the defendants were at all times herein mentioned under a duty to keep the aforementioned sidewalk in a safe, proper and secure manner, in good repair and free from obstruction and defect.

28. That as a result of the foregoing, the infant plaintiff was caused to and did sustain severe and serious injuries and was required to seek and maintain medical care and attention in an effort to cure and alleviate the same and, upon information and belief, will be compelled to do so in the future.

29. That this occurrence and the injuries sustained by the infant plaintiff was caused wholly and solely by the negligence of the defendants.

30. That as a result of the foregoing, this infant Plaintiff has been damaged in a sum that exceeds the jurisdictional amount of all lower Courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF LA VAIDA THOMAS

31. This plaintiff repeats, reiterates and realleges each and every allegation in paragraphs of this Complaint numbered "1" through "30", inclusive, with the same force and effect as though the same were more fully set forth at length herein.

32. That at all times herein mentioned, this plaintiff was the grandmother of the infant plaintiff, Terence Cousins and was and still is entitled to the comfort, society and companionship of the infant plaintiff, Terence Cousins.

33. That as a result of the foregoing, this plaintiff has been deprived of the comfort, society and companionship of the infant plaintiff, Terence Cousins, and, upon information and belief, will be so deprived in the future.

34. That at all times herein mentioned, plaintiff, La Vaida Thomas, has been caused to incur medical expenses on behalf of the infant plaintiff, Terence Cousins, and, upon information and belief, will be so compelled to do so in the future.

35. That as a result of the foregoing, this plaintiff has been damaged in the sum that exceeds the jurisdictional amount of all lower Courts which would otherwise have jurisdiction.

WHEREFORE, infant plaintiff, Terence Cousins, on the First Cause of Action demands judgement against the defendants in the sum above mentioned, and plaintiff, La Vaida Thomas,

on the Second Cause of Action demands judgement against the defendants in the sum above
mentioned, all together with the costs and disbursements of this case.

Dated: New York, New York
       February 16, 2007

                                    Antin, Ehrlich & Epstein, LLP
                                    Attorneys for Plaintiffs
                                    49 West 37th Street, 7th Floor
                                    New York, New York 10018
                                    (212) 221-5999


                              By: _____
                                        Jeffrey S. Antin

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK : ss

I, the undersigned, am an attorney admitted to practice in the courts of New York State, and say that:

I am a member of the firm of Antin, Ehrlich & Epstein, LLP, the attorneys of record, for Plaintiffs.

I have read the annexed AMENDED VERIFIED COMPLAINT and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge is based upon the following:

Interviews and/or discussions with the Plaintiff and/or his family papers and/or documents in the file.

The reason I make this affirmation instead of Plaintiff(s) is because said Plaintiff(s) resides outside of the county from where your deponent maintains his office for the practice of law.

Dated: New York, New York
      February 16, 2007

Jeffrey S. Antin

**EXHIBIT H**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------x

TERENCE COUSINS, by his grandmother and legal guardian
LA VAIDA THOMAS AND LA VAIDA THOMAS,
individually,

Index No.: 23677/2005

VERIFIED ANSWER

Plaintiff(s),

-against-

THE CITY OF NEW YORK AND WILLIAM H. PERRY

Defendant(s).

-------------------------------------------------------------------x

Defendant, WILLIAM H. PERRY (hereinafter "PERRY") by his attorney ANN
C. NORTHERN, answering the Complaint of Plaintiffs, TERENCE COUSINS, by his
grandmother and legal guardian LA VAIDA THOMAS AND LA VAIDA THOMAS,
individually, upon information and belief, respectfully shows to this Court and alleges:

1.      Defendant PERRY denies having knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraphs "1", "2", "3", "4", "5",
"6", "7", "8", "9" and "10".

2.      Defendant PERRY denies paragraphs "11", "12", "13", "14", and "15".

3.      Defendant PERRY denies having knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraphs "16".

4.      Defendant PERRY denies paragraphs "17".

5.      Defendant PERRY denies having knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraphs "18".

6.    Defendant PERRY denies paragraphs "19".

7.    Defendant PERRY denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "20", "22", "23", "24".

## AS AND FOR THE DEFENDANT PERRY'S FIRST AFFIRMATIVE DEFENSE AGAINST PLAINTIFF FOR FAILURE TO STATE A CAUSE OF ACTION

8.    Plaintiff fails to state a claim upon which relief can be granted. Therefore, the complaint should be denied in its entirety.

## AS AND FOR THE DEFENDANT PERRY'S SECOND AFFIRMATIVE DEFENSE AGAINST PLAINTIFF FOR LACK OF PROPER SERVICE

9.    The Court lacks personal jurisdiction on Defendant PERRY since there was no proper service pursuant to CPLR 308. Therefore, the complaint should be denied in its entirety.

## AS AND FOR THE DEFENDANT PERRY'S THRID AFFIRMATIVE DEFENSE AGAINST PLAINTIFF FOR IMPROPER PARTY

10.    The Defendant WILLIAM H. PERRY is not a proper party to the lawsuit. Defendant did not own the premises located at 601 East 163rd Street County of Bronx, City and State of New York on June 12, 2005 and the complaint should be dismissed against defendant PERRY.

WHEREFORE, because of the foregoing, defendant PERRY asks judgment dismissing that:

1.    Plaintiff's complaint against defendant PERRRY be dismissed in its entirety;

2.    Defendant PERRY have and recover judgment against the plaintiff for costs of this Verified Answer including reasonable attorney's fees;

3.    Defendant have such other and further relief as may be just and proper.

Dated:  February 15, 2007
        Brooklyn, New York

                                              Yours, etc.,

                                              _____
                                              ANN C.NOTHERN, ESQ.
                                              26 Court Street, Suite 1600
                                              Brooklyn, New York 11242
                                              718-596-5168
                                              718-596-5342 (fax)

To:     Jeffrey S. Antin, Esq
        Antin, Ehrlich & Epstein. LLP
        *Attorney(s) for the Plaintiff*
        49 West 37th Street, 7th Floor
        New York, NY 10018
        (212)-221-5999

        Michael A. Cardozo, Esq.
        The City of New York
        100 Church Street
        New York, NY 10007
        File No.: 05TT017772

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK)
                  ss.:
COUNTY OF KINGS)

      I, the undersigned, am an attorney admitted to practice in the courts of New York

State, and say that:

      I am the attorney of record, for Defendant WILLIAM H. PERRY

      I have read the annexed Verified Answer and know the contents thereof and the

same are true to my knowledge, except those matters therein which are stated to be

alleged on information and belief, and as to those matters I believe them to be true. My

belief, as to those matters therein not stated upon knowledge is based upon the following:

      Interviews and/or discussions with the Defendant WILLIAM H. PERRY and

papers and/or documents in the file.

      The reason I make this affirmation instead of Defendant is because said

Defendant resides outside of the county from where your deponent maintains his office

for the practice of law.

Dated: February 15, 2007
       Brooklyn, New York

                         ANN C. NORTHERN

## AFFIDAVIT OF SERVICE

State of New York)
              ss.:
County of Kings)

Cherisse Hutchinson, being duly sworn deposes and says:

I am not a party to this matter, I am over 18 years of age and reside at Brooklyn, New

York. On Thursday, February 15, 2007, I served a true copy of the Verified Answer

in the following manner:

Via United States Postal Service regular priority to the following recipients:

Jeffrey S. Antin, Esq
Antin, Ehrlich & Epstein, LLP
*Attorney(s) for the Plaintiff*
49 West 37th Street, 7th Floor
New York, NY 10018
(212)-221-5999

Michael A. Cardozo, Esq.
The City of New York
100 Church Street
New York, NY 10007
File No.: 05TT017772

                                            **Cherisse Hutchinson**

Sworn to before me this
15th day of February, 2007

NOTARY PUBLIC

ANN C. NORTHERN
Notary Public, State of New York
No. 24-6837752
Qualified in Kings County
Commission Expires April 30, 19__

**EXHIBIT I**

## FIRST NOTICE OF A LIABILITY CLAIM

### FROM

## TANENBAUM HARBER COMPANY CLAIMS DEPT.

### RICHARD GLASER

### TELE: 212-603-0142   FAX: 212-265-9021

### E-MAIL GLASERr@tanhar.com

3~

DATE:   08/24/07   ~~(Twenty-eight page~~s)

TO:   MORSTAN GENERAL AGENCY
      FAX:   516-302-8077 / TELEPHONE #:516-488-6736

RE:   INSD:   MILLENIUM DANCE COMPANY.
      DOL:   06/12/2005
      CLMT:   TERRENCE COUSINS by his GNG

### MESSAGE

Faxing to your attention FIRST NOTICE OF LOSS, SUPPLEMENTAL
SUMMONS and MOTION FOR DEFAULT. Please contact the insured,
they will provide you with any additional information available.

CONFIRMATION TO: DENISE PERRY : FAX# 718-328-1638 ✓

We have asked for an appropriate response from the insurance company or
companies be directed to you. If they need further clarification,
documentation, statements etc. they will be contacting you direct. If there are
any issues or explanations we can assist you with, please contact our
Department.

P.O. Box 4500, Manhasset, NY 11030
Tele: 516-488-4747 Ext. 3234
Fax: 516-302-8039
Email: Emarshall@morstan.com

**Morstan General Agency, Inc.**

*Cheryl*
*Ko24631*

# Fax

| To: | *U. S. UNDERWRITERS INS.* | From: | *Erica Marshall* |
|-----|---------------------------|-------|------------------|
| Attn: | *GL CLAIMS DEPT.* | Pages: | |
| Policy # | *CL 3079515* | Date: | *8/27/2007* |
| Re: | *MILLENIUM CARE INC.* | | *d/l: 6/12/05* |
| | | | *CLAIMANT: TERRANCE* |
| | | | *COUSINS, MINOR* |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

*Attached please find General Liability Loss Notice, Broker's Acord, Policy, Notice of Motion, Affirmation, Supplemental Summons and Verified Complaint and Attorney's Letter.*

*Please review and acknowledge receipt.*

*Thank you,*
*Erica Marshall*

*Cc: Tenenbaum Harber Co.*
*Richard Glaser*

# ACORD™ GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM

MILGAR 3

DATE 08/27/07

| PRODUCER PHONE (A/C, No, Ext) 516 488-4747 | NOTICE OF OCCURRENCE | DATE OF OCCURRENCE AND TIME | AM | DATE OF CLAIM | PREVIOUSLY REPORTED |
|---|---|---|---|---|---|
| Morstan General Agency, Inc. | NOTICE OF CLAIM | 06/12/05 | PM | | YES X NO |

Morstan General Agency, Inc.
P.O. Box 4500
Manhasset, NY 11030-4500

| EFFECTIVE DATE | EXPIRATION DATE | POLICY TYPE | RETROACTIVE DATE |
|---|---|---|---|
| 09/26/04 | 09/26/05 | OCCURRENCE   CLAIMS MADE | |

| COMPANY | NAIC CODE: | MISCELLANEOUS INFO (Site & location code) |
|---|---|---|
| U.S. Underwriters Insura | | |

| CODE: | SUB CODE: | POLICY NUMBER | REFERENCE NUMBER |
|---|---|---|---|
| AGENCY CUSTOMER ID: 276405 | | CL3079515 | 34882 |

## INSURED

| NAME AND ADDRESS | SOC SEC # OR FEIN: | CONTACT NAME AND ADDRESS | CONTACT INSURED | WHERE TO CONTACT |
|---|---|---|---|---|

Millenium Care, Inc.
c/o Dep Corp
~~20~~ *980 Prospect* Prospect Avenue
Bronx, NY 10459

WHEN TO CONTACT

| RESIDENCE PHONE (A/C, No) 718 542-7211 | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|---|---|

## OCCURRENCE

| LOCATION OF OCCURRENCE (Include city & state) 601 EAST 163RD ST. & 955 CAULDWELL AVE. BX., NY | AUTHORITY CONTACTED |
|---|---|

DESCRIPTION OF OCCURRENCE (Use separate sheet if necessary) TERRANCE COUSINS(MINOR) BY LAVAIDA THOMAS (G/N/G)- ALLEGED SLIP AND FALL -
(See attached Description of Occurrence page.)

## POLICY INFORMATION

COVERAGE PART OR FORMS (Insert form # and edition date)

| GENERAL AGGREGATE | PROD/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | PD |
|---|---|---|---|---|---|---|---|
| UMBRELLA/ EXCESS | UMBRELLA | EXCESS | CARRIER: | LIMITS: | AGGR | PER CLAIM/OCC | BI SIR/ DED |

## TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER | TENANT | OTHER: | TYPE OF PREMISES |
|---|---|---|---|---|

OWNER'S NAME & ADDRESS (If not Insured)

OWNERS PHONE (A/C, No, Ext):

| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | OTHER: | TYPE OF PRODUCT |
|---|---|---|---|---|

MANUFACTURER'S NAME & ADDRESS (If not insured)

MANUFACT PHONE (A/C, No, Ext):

WHERE CAN PRODUCT BE SEEN?

OTHER LIABILITY IN- CLUDING COMPLETED OPERATIONS (Explain)

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) TERRENCE COUSINS BY LAVAIDA THOMAS (G/N/G) | PHONE (A/C, No, Ext) |
|---|---|

| AGE | SEX | OCCUPATION | EMPLOYER'S NAME & ADDRESS | PHONE (A/C, No, Ext) |
|---|---|---|---|---|

| DESCRIBE INJURY | | WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|---|---|
| FATALITY SEE SUMMONS | | | |

| DESCRIBE PROPERTY (Type, model, etc) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? | WHEN CAN PROPERTY BE SEEN? |
|---|---|---|---|

## WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|

REMARKS Reported to: Erica Y. Marshall

| REPORTED BY BROKER | REPORTED TO See Remarks | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|---|

ACORD 3 (2001/02) 1 of 3 #5969 NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE  EYM  © ACORD CORPORATION 1986

**EXHIBIT J**



# UNITED STATES LIABILITY INSURANCE GROUP
### A BERKSHIRE HATHAWAY COMPANY

190 South Warner Road • P.O. Box 6700 • Wayne, PA 19087-2191
610-688-2535 • 888-523-5545 • Fax 610-688-4391
www.usli.com

Claims Department
610-687-9398 direct fax

August 30, 2007

**CERTIFIED AND REGULAR MAIL**
**RETURN RECEIPT REQUESTED**

Millenium Care Inc.
C/O Dep. Corp.
980 Prospect Ave.
Bronx, NY 10459

Millenium Care Inc.
2542 Frederick Doduglass Boulevard
New York, NY 10030

Millenium Care Inc.
233 West 179th Street
Bronx, NY 10453

Attn: Denise Perry

| SCAN TO | |
| --- | --- |
| Claim # | |
| Coverage / DJ | ☑ |
| Pay / Reserves | ☐ |
| Investigation | ☐ |
| Damage | ☐ |
| Legal | ☐ |
| Reinsurance | ☐ |
| Invoices | ☐ |

RE:  Insured:       Millenium Care Inc.
     Claimant:      Terrence Cousins
     File:          K026631
     Policy:        CL3079515
     Date of Loss:  6/12/05

Dear Ms. Perry:

This confirms our receipt of the Summons and Complaint filed on behalf of Terrence Cousins against The City of New York et al. in Bronx County Supreme Court. Plaintiff alleges that he fell due to a defect in the sidewalk at your location.

In addition we received a Notice Of Motion requesting that a Default Judgment be entered against Millenium Care Inc. for its failure to provide an Answer to the Complaint.

U.S. Underwriters Insurance Cmpany provides commercial general liability coverage to Millenium Care Inc. under Policy No. CL3079515 policy term 9/26/04 to 9/26/05.

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Please note that the policy conditions require that you promptly report all claims and immediately forward any legal papers to our attention. This loss occurred June 12, 2005 but was not reported to us until August 27, 2007. To the extent that you were aware of this incident prior to August 27, 2007 but did not report it, we are disclaiming coverage. Plaintiff also did not notify us of this claim. By copy of this letter to plaintiff counsel Jeffrey S. Antin, we notify him as well as to our reservation of rights.

**We will further advise you as to our position regarding coverage once we have completed our investigation.**

Further, the Complaint does not state the amount of damages that plaintiff is seeking. The absence of a cap on damages presents the possibility of a verdict in excess of your policy limits.

This is letter is to notify you that you may wish to retain personal counsel at your own expense to represent you for any exposure above your policy limit. Further, we recommend that you forward a copy of this letter to your excess carrier. U.S. Underwriters Insurance Company will not be responsible for any verdict rendered in excess of your policy limit.

This correspondence should not be deemed as a waiver of U.S. Underwriters Insurance Company rights under Policy CL3079515 or as a waiver of any coverage defenses not specifically asserted herein. Any action taken by U.S. Underwriters Insurance Company to investigate, evaluate, defend any claim presented shall not waive any terms or conditions of the policy, nor shall any such actions waive any of our other rights.

Should you have any questions regarding this claim or the coverage afforded under your policy of insurance, please feel free to contact me.

Very truly yours,

Cheryl Hazard CPCU AIC AIM ASLI AIS ARe SCLA
Claims Examiner

C  Jeffrey S. Antin, Attorney for Plaintiff
C  Morstan General Agency
C  Michael A. Cardozo, Attorney for Defendant The City of New York
C  Ann C. Northern, Attorney for Defendant William Perry
C  RMG Investigations

**EXHIBIT K**

# UNITED STATES LIABILITY INSURANCE GROUP
### A BERKSHIRE HATHAWAY COMPANY

190 South Warner Road • P.O. Box 6700 • Wayne, PA 19087-2191
610-688-2535 • 888-523-5545 • Fax 610-688-4391
www.usli.com

**Claims Department**
610-687-9398 direct fax

September 21, 2007

Denise Perry
Millenium Care Inc.
2542 Frederick Douglass Boulevard
New York, NY 10030

|     | Re: | Insured | : | Millenium Care, Inc. |
| --- | --- | --- | --- | --- |
|     |     | Claimant | : | Terrence Cousins, et al. |
|     |     | Claim No. | : | K026631 |

Dear Ms. Perry:

As you know, U. S. Underwriters Insurance Company ("U.S. Underwriters") has issued a reservation of rights dated August 30, 2007, in the above-referenced matter, and now that we have concluded our investigation, we write to inform you of the disclaimer of coverage as to the claims asserted by Terrence Cousins through his grandmother and legal guardian, La Vaida Thomas, and La Vaida Thomas, individually ("Claimants") in the lawsuit entitled <u>Terrence Cousins, by his grandmother and legal guardian La Vaida Thomas and La Vaida Thomas, individually v. The City of New York, William H. Perry and Millennium Care, Inc.</u> filed in the Supreme Court of the State of New York, County of Bronx (the "Cousins lawsuit"), seeking damages for bodily injuries allegedly sustained by Terrance Cousins on June 12, 2005, while he was walking on the sidewalk adjacent to a fenced-in lot located at or about 601 East 163rd Street, Bronx, New York.

By copy of this letter to Claimants' counsel, we also notify Claimants of the grounds for our disclaimer of coverage as to all claims in the <u>Cousins</u> lawsuit.

In explaining the grounds for this disclaimer, we first refer you to the U.S. Underwriters policy, and specifically the following provisions:

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS
**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
        (1) How, when and where the "occurrence" or offense took place;
        (2) The names and addresses of any injured persons and witnesses; and
        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

The policy defines "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions, and as quoted above, occurrences are to be reported as soon as practicable.

\*        \*        \*

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Premises:**
**Project·**
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.    The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2.    The project shown in the Schedule.

The policy's declaration page indicates that the location of all premises you own, rent or occupy is: 1) 601 East 163rd Street, Bronx, NY 10451.

The claims at issue in the <u>Cousins</u> lawsuit involve an accident that allegedly occurred on or about June 12, 2005, when the plaintiff, Terrence Cousins, was walking on the sidewalk adjacent to a fenced-in lot located at or about 601 East 163rd Street, Bronx, NY. U.S. Underwriters, however, did not receive notice of the occurrence or claim until or about August 20, 2007, after the commencement of the <u>Cousins</u> lawsuit, even though Ms. Perry was aware of the occurrence and the claims asserted by the claimants well before notice was provided to U.S. Underwriters. The notice provision, therefore, was violated, and U.S. Underwriters hereby disclaims coverage for the <u>Cousins</u> lawsuit on that basis.

We also note that the investigation indicates that the occurrence took place on the sidewalk adjacent to the fenced-in lot located between 601 East 163rd Street and 955 Cauldwell Avenue, Bronx, NY. 955 Cauldwell Avenue, Bronx, NY is not a covered location under the U.S. Underwriters policy, and any claims stemming from injuries sustained at that location are

not covered by the U.S. Underwriters policy. Thus, U.S. Underwriters hereby disclaims coverage for the <u>Cousins</u> lawsuit on that basis as well.

We also note that co-defendant William H. Perry may be a principal of Milennium Care, Inc. To the extent William H. Perry is an insured under the policy, the same grounds for disclaimer would apply, and we hereby disclaim coverage to William H. Perry as well on the same grounds.

In that U.S. Underwriters had previously retained counsel to defend you in the <u>Cousins</u> lawsuit, U.S. Underwriter will continue that defense, without waiving any of the disclaimer grounds asserted in this letter and subject to the outcome of the declaratory judgment action which will be filed by U.S. Underwriters. In the declaratory judgment action, U.S. Underwriters will seek a judicial declaration as to U.S. Underwriters' rights and obligations under the policy as to this claim, and specifically request a declaration that it is not required to provide a defense or indemnification any insured for the claims asserted in the <u>Cousins</u> lawsuit.

This coverage determination, of course, is based upon the information presently available and all rights under the policy are reserved to the extent information is later discovered that warrant disclaimer on additional grounds.

If you have any additional information or questions, please do not hesitate to contact me.

Very truly yours,

Cheryl Hazard CPCU AIC SCLA
Claims Examiner

cc:

William H. Perry
134 West 180th Street
Bronx NY 10453

Denise Perry
133 West 179th Street
Bronx, NY 10453

Antin, Ehrlich & Epstein
Jeffrey S. Antin
Attorneys for Plaintiff
40 West 37th Street, 7th Floor
New York, NY 10018

The City of New York
Corporation Counsel
100 Church Street
New York, New York 10007

BC: Steve Verveniotis